# THE SUPREME COURT

OF

## THE STATE OF MISSOURI,

OCTOBER TERM, 1860, AT ST. LOUIS.

[CONTINUED FROM VOL. XXX.]

---

WILLIAMS, Respondent, v. DERIAR, Appellant.

1. The possession of premises by a party under a mere permission to occupy for an indefinite period, no rent being reserved, is not a tenancy from year to year; three months' notice to quit is not necessary.

*Appeal from Jefferson Circuit Court.*

This was an action for an unlawful detainer commenced November 3, 1857. The defendant Deriar was a contractor for the construction of the St. Louis and Iron Mountain Railroad. In July, 1854, he obtained leave from the plaintiff to build a shanty on the land of the latter, which he was to occupy until the completion of the road. The road was to be completed by the contractors by January 1, 1856. Something was said between the parties as to the price to be paid by the plaintiff for the materials composing the shanty when the defendant should leave. On the 22d of May, 1857, the

2—VOL. XXXI.

Williams v. Deriar.

plaintiff gave the defendant notice to quit in thirty days. The road was finished in December, 1857. The plaintiff also claimed damages for timber cut by defendant.

The court, of its own motion, gave the following instruction: "That by the agreement between plaintiff and defendant for the use or occupancy of the land in controversy for a longer period than one year, the defendant acquired no right to retain the possession for any definite period, the said agreement not being in writing, and the defendant, after one month's previous notice to quit the premises, was liable to be turned out of the occupancy by a suit for forcible detainer; and if they find that by the agreement the right to occupy and use the land expired on the 1st of January, 1856, then he was liable to be turned out without notice. In either case the jury will find for the plaintiff, and assess his damages to any sum they may find the plaintiff has sustained in consequence of any waste of timber, &c., and for being kept out of the premises after the defendant became liable to surrender them as above."

The court refused instructions asked by defendant. The jury rendered a verdict in favor of plaintiff.

*Johnson & Beal*, for appellant.

I. The court erred in considering Deriar as a tenant at will. He was not a tenant at will. (Kerr v. Clark, 19 Mo. 132; Ridgley v. Stillwell, 25 Mo. 570.) The year commenced about August 1, 1854. Plaintiff was bound to give his three months' notice to quit. (R. C. 1855, p. 1012, § 12.) Notice should have been served by May 1, 1857. It was not served until May 22, 1857. The notice was not sufficient. One month's notice was not sufficient.

*Green & Fletcher*, for respondent.

I. The judgment was for the right party. The instruction given fairly presented the law. The premises were let for more than a year; it amounted to a tenancy at will. Thirty days' notice was sufficient. (R. C. 1855, p. 807, § 5.) No rent was reserved. So the letting was for a definite

time; hence no notice to quit was necessary. (R. C. 1855, p. 1012, § 14; 28 Mo. 65; 4 Kent, 114.) No demand in writing was necessary. (8 Cow. 13.) The instructions asked were properly refused.

NAPTON, Judge, delivered the opinion of the court.

In Kerr v. Clark, 19 Mo. 132, and in Ridgley v. Stillwell, 25 Mo. 570, it was held that a verbal lease for a longer period than a year, whether definite or indefinite, created a tenancy from year to year. In each of the cases an actual tenancy existed, upon a reservation of rent, and the rule is announced in reference to this state of facts. In the first mentioned case, there was an actual holding for upwards of two years, under a parol lease for five years, at a fixed rent, and the court say: " A parol lease, though by the statute of frauds declared to create a tenancy at will, has the effect of creating a tenancy from year to year, such being the established construction of the statute of 29 Char. II., ch. 3, from which our statute is taken. Such is the effect of the *holding at an annual rent,* as admitted in this case, for a period extending through parts of three years." In Ridgley v. Stillwell, the tenant had been in possession for five years, and was beyond all doubt a tenant from year to year, unless the circumstance that the rent was payable monthly could be considered as changing the character of the tenancy. That circumstance was not so regarded, and it is said in the opinion of the court that " a tenancy at will must be created by express contract."

Chancellor Kent observes in his commentaries (4 Kent, 112): " Estates at will, in the strict sense, have become almost extinguished under the operation of judicial decisions. Lord Mansfield observed that an infinite quantity of land was holden in England without lease. They were all, therefore, in a technical sense, estates at will; but such estates are said to exist only notionally, and where no certain term is agreed on, they are construed to be tenancies from year to year, and each party is bound to give reasonable notice of an

intention to terminate the estate. The language of the books now is that a tenancy at will arises from grant or contract, and that general tenancies are constructively taken to be tenancies from year to year. If the tenant holds over by consent given, either expressly or constructively, after the determination of a lease for years, it is held to be evidence of a new contract, without any definite period, and is construed to be a tenancy from year to year. The moment the tenant is suffered by the landlord to enter on the possession of a new year, there is a tacit renovation of the contract for another year, subject to the same right of distress, and half a year's notice to quit must be given prior to the end of the term."

These opinions are all expressed in reference to tenancies properly so called, where there is a rent reserved. To guard against their application to a different class of cases, the learned commentator adds, that "tenancies at will are not to be understood by this general language as not existing. A simple permission to occupy creates a tenancy at will, unless there are circumstances to show an intention to create a tenancy from year to year."

The distinction alluded to by Chancellor Kent is perhaps more fully explained by the author of a treatise on the statute of frauds, who has carefully collected all the English and American cases on the subject. (Browne on Stat. Frauds, p. 38.) This writer says: "The English statute of frauds does not make verbal leases void, but allows them the effect of leases at will. After entry by the lessee, however, and payment of rent, such a tenancy is converted into a tenancy from year to year." It was at one time supposed that this doctrine of tenancy from year to year arose altogether from the exception in the second section of the statute, which is not reënacted in our law, but this author says: "It is quite clear that this doctrine is much older than the statute of frauds, which, in giving to verbal leases of certain kinds the force of estates at will, left it to the common law to apply all the incidents of that estate, including its convertibility by entry and payment of rent into a tenancy from year to year."

It is therefore added, in accordance with the position taken by Chancellor Kent in the passage referred to from his commentaries, that " a mere verbal lease for a term exceeding that prescribed by the statute, without any thing done in pursuance of it, has no other effect than a strict estate at will, nor, it seems, will the entry of the lessee under it have the effect to convert it into a tenancy from year to year, unless there be also a payment or acknowledgment of rent."

This doctrine is distinctly declared in the case of Doidge v. Bowers, 2 Mees. & Welsb. 365, a case referred to in each of the treatises from which we have quoted.

In the present case there was a verbal lease for an indefinite period, to be determined by an uncertain event, to-wit, the completion of the defendant's contract on the railroad. There was no rent reserved ; there was a mere permission to occupy and construct a shelter, which the witnesses call a *shanty*. The contract was made in 1854, and the occupation was to last at least until January 1, 1856, and perhaps longer, if the defendant should not finish his work by that time. It appears that there was some conversation between the parties concerning the disposition of the building put up by the defendant at the expiration of the tenancy. According to the statement of the plaintiff's witnesses, the defendant observed that his custom was to charge half price for the materials in the buildings put up under such circumstances ; to which the reply of the plaintiff was " we will see about it." According to the understanding of the defendant's witnesses, the plaintiff agreed to pay certain specified prices for the materials, but whether these prices would be their full value, or half their value, does not appear. It seems that the defendant brought a suit to recover their value, which he fixed at eighty dollars, but the result of the suit was a verdict for ten dollars only.

We do not perceive how the understanding relative to the house, whatever it may have been, can have any effect in the construction of the nature of this tenancy. There is certainly nothing in the case like an annual rent, or a holding

from year to year. Chancellor Kent says: "The reservation of an annual rent is the leading circumstance that turns leases for uncertain terms into leases from year to year. If the tenant be placed on the land, without any terms prescribed or rent reserved, and as a mere occupier, he is strictly a tenant at will." If the defendant's tenancy is to be considered as one from year to year, at what time did each year expire? It is well settled that in these cases of verbal leases for more than a year, which the statute declares leases at will, and which entry and payment of rent convert into tenancies from year to year, that the stipulations of the contract, as to repairs, as to the amount of rent, as to the time when the tenant must quit, are still enforced. The statute simply defeats their obligation as to the length of the term. Hence it was held that, where under the lease the year expired on Lady-day, a notice to quit on some other day would not answer. (Doe v. Bell, 5 T. R. 471.) But how would a notice to quit be framed in this case, on the assumption that the tenancy was from year to year? When did the year commence and when end? In tenancies from year to year, the notice must be, under our statute, three months, but it must be to quit at the expiration of the year, and not at any intermediate period at the caprice of the lessor.

The case of Doe, dem. of Carson, v. Baker, 2 Dev. 270, was essentially like the present. In that case, a person entered into the possession of a tract of land and made improvements under a parol agreement to convey, and no rent was reserved. The court held he was not liable for rent by way of use and occupation; that his possession was merely by the license of the owner for an intermediate period, which, Chief Justice Ruffin observed, "seems to be the only remnant of the old strict common law tenancy at will that now exists."

In this view of the tenancy created by the contract between plaintiff and defendant, we do not see that any thing could be gained by ordering another trial. The defendant has recovered in another action the price of his lumber, and the

plaintiff in this suit has obtained possession of his land, with damages for the trees cut down by the defendant for fire-wood. It is impossible to say, under the evidence, how the equity of the case may be, but this action is not one in which that would be satisfactorily adjusted. Judgment affirmed.

SCOTT, Judge, dissenting. I am in favor of reversing the judgment under former decisions of this court.